UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
CHRISTOPHER J. BEST,

                      Plaintiff,                   06-CV-0317-E(Sr)

              v.                         **DECISION**
                                            **and ORDER**
MICHAEL J. ASTRUE[1],
Commissioner of Social Security

                      Defendant.
_____


## <u>INTRODUCTION</u>

Plaintiff Christopher J. Best ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Garvy B. Arthur III denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable Richard Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 2, 2007.

Commissioner's ruling or, in the alternative, remand of the matter for a new hearing. The Commissioner cross-moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Arthur's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards. For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## BACKGROUND

On June 5, 2002, Plaintiff, who was then 32 years old, filed an application for Disability Insurance Benefits (Tr. at 53-55). Plaintiff claimed an inability to work since July 7, 2001, due to impairments affecting his back, neck and shoulders in addition to hearing loss and tinnitus (Tr. at 74). Plaintiff's application was denied initially on January 3, 2003 (Tr. at 29-32), and he then filed a timely request for a hearing before an ALJ (Tr. at 35). Plaintiff appeared via video conference, with counsel, in an administrative hearing before ALJ Garvy Arthur III on June 18, 2004 in Washington DC (Tr. at 340).

In a decision dated January 25, 2005, ALJ Arthur found that although Plaintiff's degenerative disc disease and affective

disorder were severe, the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act")(Tr. at 14-24). Plaintiff appealed that decision to the Social Security Appeals Council ("Appeals Council") on January 31, 2005 (Tr. at 9).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 30, 2006 (Tr. at 5-7). On May 17, 2006, Plaintiff filed this action.

## **DISCUSSION**

## I.   **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de

novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.   **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In finding that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability benefits. See 20 C.F.R. § 404.1520.[3] Under step one of that process, the ALJ found that the

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which

Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (Tr. at 22).

At steps two and three of the analysis, the ALJ found that Plaintiff had degenerative disc disease and an affective disorder (Tr. at 22). He found these impairments to be severe within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4., (listings 1.04 (Spinal Disorders), 12.04 (Affective Disorders) (Tr. at 17).

At steps four and five of the five-step evaluation process, the ALJ concluded that prior to August 20, 2002, the Plaintiff retained the residual functional capacity to perform a limited range of light and sedentary work.[4] These limitations are detailed at length in the ALJ's decision (Tr. at 23). Based on this analysis of the Plaintiff's condition, the ALJ determined that Plaintiff was unable to return to any of his past relevant work (Tr. at 23). The ALJ found that the Plaintiff's residual functional capacity would allow him to perform the jobs of cashier, inspector/marker, electrical production worker, charge account clerk, document processor or order clerk (Tr. at 23). The ALJ found that these jobs existed in significant numbers in the

---

significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

regional and national economies, and consequently the plaintiff was not disabled prior to August 20, 2002.

The ALJ found that effective August 20, 2002 the Plaintiff was indeed disabled (Tr. at 23-24). This finding is not disputed by either party, and thus is not addressed here (Def. Br. at 3, FN 2; Pl. Br. at 2, FN 2).

The plaintiff contends that the medical evidence in the record supports a finding of disability for the period from July 7, 2001 through August 20, 2002. However, the ALJ's conclusion that the Plaintiff was not disabled during this period is amply supported by the medical evidence in the record. The ALJ concluded "that prior to August 20, 2002, the claimant retained the residual functional capacity to perform light and sedentary work (Tr. at 19)." The ALJ qualified this finding by giving a number of limitations on the range of work at these levels that the plaintiff could perform (Tr. at 19). However, the ALJ properly found that Plaintiff retained a functional capacity inconsistent with a finding of disability based on the evidence in the record.

A plaintiff claiming disability has "a continuing burden of showing, by means of 'medically acceptable clinical and laboratory diagnostic techniques'" that his physical and mental impairments are of such severity that he is unable to perform *any* substantial gainful activity. Matthews v. Eldridge, 424 U.S. 319, 336 (1976).

It is not enough for a plaintiff to show that he is unable to perform work he has done in the past, but he must also show that he is unable to perform "any other kind of substantial gainful work which exists in the national economy." Id.   Based on the evidence in the record, the ALJ correctly found that the plaintiff did not meet this burden for the claimed period of disability prior to August 20, 2002.

In making his finding, the ALJ extensively cited the opinions and records of numerous physicians and other professionals who treated the Plaintiff (Tr. at 15-17).  The opinions of Dr. George J. Burnett and Robert Hill, Ph.D. reveal that while the Plaintiff does experience some functional impairment due to his affective disorder, the level impairment is mild (Tr. at 210-223, 205-09). As such, the ALJ's determination that the Plaintiff's affective disorder was not disabling is supported by substantial evidence in the record.

The bulk of the analysis focuses on the Plaintiff's back impairment.  From the record, it is clear that prior to August 20, 2002, the plaintiff experienced severe back pain, and other related problems.  However, despite this impairment, the Plaintiff retained the functional capacity to perform a limited range of sedentary and light work.  The treatment notes of Dr. Satish Krishnamurthy in July and August of 2001 reveal that the Plaintiff was experiencing severe pain and difficulty, but that he was

showing improvement in pain symptoms and still retained a high level of functionality (Tr. at 155-56, 278, 182). Dr. Krishnamurthy stated that the Plaintiff was not candidate for surgery unless his condition worsened, and instead recommended a course of physical therapy and pain medication (Tr. at 155-56, 278, 182).

In August of 2001, the Plaintiff saw a Physical Therapist, Luis D'Aguiar PT, and reported a decrease in pain symptoms (Tr. at 153-55). In November of 2001, the Plaintiff saw Dr. Amy Quinlivan, and she once again noted chronic low back pain (Tr. at 282). Accordingly, she adjusted his medications, and reported that the Plaintiff was unable to do his usual work.

In April, 2002, the Plaintiff met with Dr. John Pollina regarding his severe back impairment (Tr. at 131-32). Noting the severe pain, and a "very large lumbar disc herniation," the Dr. recommended surgery, and a microdiskectomy was performed (Tr. at 131-26). In May 2002, the Plaintiff reported to Dr. Quinlivan the since his surgery he had experienced an improvement in leg pain, despite persistence of lower back pain (Tr. at 283-86). Also in May of 2002, the Plaintiff met with Dr. David Bagnall (Tr. at 159-61). Dr. Bagnall's notes indicate that the Plaintiff was still experiencing severe pain, but he still retained significant physical function and ability (Tr. at 159-61).

On August 27, 2002, the Plaintiff again met with Dr. Quinlivan, and the medical notes reveal a sharp deterioration in his symptoms (Tr. at 283-84). The visit was "urgent," and the Dr.'s report states that plaintiff's "back pain is worse...over the weekend he has had sharp shooting pain from his lower back down both legs...[h]e will get so much pain that he feels like he cannot stand (Tr. at 284-85)."

In his hearing testimony, the Plaintiff testified that "[j]ust after the surgery I felt much, much better just [due] to the fact that when they alleviated the bulge it stopped putting pressure on the nerves...it took a lot of pressure off of the problems I was having as far as numbness, the weakness, and you know everything that went along with that (Tr. at 348)." He went on to note that this "improvement only lasted a few months" after the surgery in April 2002 (Tr. at 348). At which point he reported a sharp downturn in his symptoms (Tr. 347-50).

The medical evidence in the record indicates the onset of a severe back impairment in mid 2001. According to the medical evidence, it appears that the severity of Plaintiff's impairment fluctuated between improvement and worsening with time and treatment until August of 2002. In August 2002, the back impairments of the plaintiff took a precipitous downturn, and the plaintiff's symptoms became disabling. The period of time between July 7, 2001 and August 20, 2002 is best characterized as the

development of the Plaintiff's severe impairments into a disability.

It is clear from the record that during this period of time, the Plaintiff was unable to return to his past relevant work as an HVAC installer and technician.  However, the medical records do not indicate that the Plaintiff was unable to do *any* work during this period.  The fact that the Plaintiff did not work during this period does not, in and of itself, indicate disability.  Rather, the court must assess the residual functional capacity of the plaintiff and determine whether there exist jobs for which that capacity would make him eligible.  The ALJ correctly made this analysis in the Plaintiff's case based on the substantial evidence in the record.

The ALJ assessed the Plaintiff's residual functional capacity in light of his severe back and affective impairments, and found that he was capable of performing a limited range of light and sedentary work (Tr. at 19).  The ALJ then took this assessment and properly put the Plaintiff's case before a vocational expert ("VE") in order to determine if there would be jobs available to the plaintiff in the national economy considering his condition (Tr. at 375-383).  The VE testified that there were a number of job categories that the plaintiff could functionally qualify for despite his impairments and limitations (Tr. at 375-383).  The VE also testified that there were a significant number of jobs in

these categories in the regional and national economies (Tr. at 375-383). The ALJ's analysis was proper, and his findings were supported by substantial evidence in the record.

The court does not dispute the severity of the Plaintiff's impairments during this period, but the Plaintiff has not met his burden of proving that these impairments prevented him from engaging in *any* substantial gainful activity during the period in dispute.

The ALJ properly concluded, based on the evidentiary record in its entirety, that the claimant retained a residual functional capacity sufficient to perform the functional demands of a limited range of light and sedentary exertional work during the claimed period prior to August 20, 2002, and therefore was not disabled within the meaning of the Act.

## CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 11, 2008